IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs January 29, 2014

## DEMETRIUS WYNN v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Knox County**
**No. 99827     Steven W. Sword, Judge**

**No. E2013-01303-CCA-R3-PC - Filed February 19, 2014**

The petitioner, Demetrius Wynn, filed in the Knox County Criminal Court a petition for post-conviction relief from his guilty plea to possession of less than .5 grams of cocaine with the intent to sell. He alleged that his trial counsel was ineffective and that his guilty plea was not knowingly and voluntarily entered. The post-conviction court denied relief, and the petitioner appeals. Upon review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and JEFFREY S. BIVINS, JJ., joined.

J. Liddell Kirk, Knoxville, Tennessee, for the appellant, Demetrius Wynn.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Senior Counsel; Randall E. Nichols, District Attorney General; and Philip H. Morton, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Factual Background

On April 17, 2012, the petitioner entered a best interest guilty plea to the following: on count one: the sale of less than .5 grams of cocaine, a Class C felony; on count three: the sale of less than .5 grams of cocaine, a Class C felony; on count five: the sale of a schedule III substance, a Class D felony; and on count seven: facilitation of the sale of less than .5

grams of cocaine within a school zone, a Class D felony.[1]  Other offenses were dismissed as part of the plea agreement.  Additionally, the plea agreement provided that the appellant would be sentenced as a Range I, standard offender to six years each on counts one and three, two years on count five, and four years on count seven.  The sentences for counts one, three, and five were to be served concurrently with each other but consecutively to the sentence for count seven.  The offense in count seven was committed in a school zone; therefore, the petitioner was required to serve one hundred percent of the minimum possible sentence, which was two years, in confinement.  The remainder of his sentence was to be served with release eligibility after service of thirty percent in confinement.  Accordingly, the petitioner's total effective sentence was ten years, the first two of which were to be served at one hundred percent.

Thereafter, the petitioner filed a petition for post-conviction relief, alleging that his trial counsel was ineffective and that his guilty pleas were not knowingly and voluntarily entered.  Specifically, the petitioner contended that he misunderstood the sentencing provisions of the plea agreement.  The petitioner maintained that trial counsel told him that after serving one hundred percent of the two-year sentence in confinement, he would automatically be placed on probation for the remainder of his sentence.  The petitioner maintained that if he had known that there was no guarantee of release on probation, he would have rejected the plea agreement and proceeded to trial.

At the post-conviction hearing, the petitioner testified that he and his co-defendant were charged with several drug offenses.  The charges to which the petitioner entered guilty pleas resulted from a confidential informant's purchases of drugs from the appellant.  The transactions were video recorded.  The petitioner said that he did not fully discuss the offenses with trial counsel because they met infrequently. When the petitioner asked to meet more frequently, counsel refused and told the petitioner that he was busy.  The petitioner said that he tried to have counsel fired.

The petitioner said that the State's initial plea offer included an eight-year sentence, one hundred percent of which to be served in confinement.  The petitioner refused the offer because he thought as a Range I offender, he should be eligible for probation.  The State's next offer also included an eight-year sentence with the petitioner to serve three years at one hundred percent and the remaining five years at thirty percent.  The petitioner ultimately accepted the State's final offer and entered best interest guilty pleas.

The petitioner said that he and counsel discussed the fact that one of the charges was

---

[1]The record reflects that in count seven, the petitioner was originally indicted on a Class B felony; however, the petitioner pled guilty to a lesser-included offense.

committed in a school zone. The petitioner understood that if he were convicted of the school zone offense, he "would have to serve the minimum of the sentence within the range at a hundred percent." He understood that his plea agreement provided for a total effective sentence of ten years. The petitioner said that he thought "if I did the two years at a hundred for the school zone, that I would be able to do the rest, eight years, on paper." The petitioner explained that he had fourteen months of pretrial jail credits. He said that trial counsel confirmed that he would have to go to the Tennessee Department of Correction for only seven to eight months "to clear" the two-year sentence.

The petitioner acknowledged that at the guilty plea hearing, he received a four-year sentence, which was "stacked" with a six-year sentence. He maintained, however, that he and counsel never discussed any of the sentences being "stacked." Nevertheless, he understood that the total effective sentence was ten years. He said, "I don't have no problem with the 10-year sentence. I am not saying that I want the 10-year sentence off the table, but it was my understanding that I was supposed to serve two years, and then they were to kick me out." He did not understand that he would be required to serve thirty percent of the ten-year sentence in confinement before becoming eligible for release and that release was not guaranteed. The petitioner said that if he had understood the sentence, he would not have entered the guilty plea and that he would have instead gone to trial. The petitioner said that he had no prior felony convictions, that he had never been sent to the penitentiary, and that he did not know "how they do their laws like that."

The petitioner acknowledged that at the guilty plea hearing, he asked the trial court questions. The petitioner said that he told the court that he was not really guilty of the offenses and that he was pleading guilty because of the "deal." The petitioner entered the plea agreement the same day that trial counsel informed him of the plea agreement.

The petitioner said that he knew if the post-conviction court granted him relief, he would be subject to the original charges. However, he maintained, "I don't want to take it back to trial. I've already pled out to the 10-year sentence. . . . All I'm trying to do is get the Court to honor what I thought I was pleading out to." He stated that if the court could not give him the probationary sentence he thought he had, he "would rather leave it as is th[a]n pursue a jury trial on those cases." He asserted that if he had known at the time of the plea that he had the option of "this 10 years at 30 percent, or . . . a jury trial on all the original charges," he would have opted for a trial. He no longer wanted to go to trial because he had "time built on this."

On cross-examination, the petitioner said that he did not understand the guilty plea proceedings. He acknowledged that he had prior misdemeanor convictions resulting from guilty pleas.

The petitioner said that at the time of his pleas, he did not know what parole was. Nevertheless, the petitioner signed the plea form, indicating that he understood the agreement, because trial counsel instructed him to sign it. The petitioner maintained that he did not read the form. The petitioner acknowledged that during the plea hearing, the trial court advised him that he would have to serve one hundred percent of two years in confinement and that he would have to serve thirty percent of the remaining sentence before becoming eligible for parole. He stated that when the trial court so advised him, he was not paying attention because trial counsel told him to agree with everything the trial court said.

The petitioner said that he had never served a sentence with release eligibility but that he did not ask the trial court to explain the term. At the plea hearing, the petitioner told the trial court that he was satisfied with counsel. He acknowledged that the court gave him many opportunities to ask questions and to have his concerns addressed. The petitioner acknowledged that his plea agreement form did not mention probation.

The petitioner's trial counsel testified that he did not tell the petitioner that after serving one hundred percent of two years in confinement, the balance of his sentence would be served on probation. Counsel explained to the petitioner that after serving one hundred percent of the two-year sentence in confinement, he would also have to serve thirty percent of the remaining sentence before becoming eligible for release. Counsel also told the petitioner that release was not guaranteed and that the parole board would make the ultimate decision regarding his release.

Counsel said that the petitioner originally agreed to a sentence of three years at one hundred percent and five years at thirty percent. The petitioner asked counsel to convince the State to reduce the time that he would serve at one hundred percent. Therefore, counsel approached the State and negotiated a sentence for two years at one hundred percent and eight years at thirty percent, and the petitioner accepted it. Counsel never mentioned the possibility of probation to the petitioner and informed the petitioner that he was not eligible for probation on the school zone offense.

On cross-examination, trial counsel said that he reviewed the entire plea agreement with the petitioner. The petitioner was greatly concerned with receiving his pretrial jail credits, and at the guilty plea hearing, the petitioner specifically mentioned that concern to the trial court.

Trial counsel said that he and the petitioner reviewed the strengths and weaknesses of the State's case. The petitioner initially wanted to take the case to trial. However, he ultimately pled guilty because of the strength of the State's case, notably the video evidence against him.

Trial counsel said that the petitioner's primary concern was to get "less time at 100 percent." Trial counsel cautioned the petitioner that he could not ensure the petitioner would be granted work credits and that the decision about work credits was left to the sheriff's discretion. Trial counsel did not estimate a release date for the petitioner, but he told the petitioner when he would be eligible for release. Trial counsel explained to the petitioner the difference between probation and parole.

After taking the matter under advisement, the post-conviction court issued an order, denying post-conviction relief. On appeal, the petitioner challenges this ruling.

## II. Analysis

To be successful in a claim for post-conviction relief, a petitioner must prove the factual allegations contained in the post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, the post-conviction court's findings of fact are entitled to substantial deference on appeal unless the evidence preponderates against those findings. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

A claim of ineffective assistance of counsel is a mixed question of law and fact. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's findings of fact de novo with a presumption that those findings are correct. See Fields, 40 S.W.3d at 458. However, we will review the post-conviction court's conclusions of law purely de novo. Id.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish deficient performance, the petitioner must show that counsel's performance was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient

to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Moreover,

> [b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component.

Goad, 938 S.W.2d at 370 (citing Strickland, 466 U.S. at 697). Further, in the context of a guilty plea, "the petitioner must show 'prejudice' by demonstrating that, but for counsel's errors, he would not have pleaded guilty but would have insisted upon going to trial." Hicks v. State, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998); see also Hill v. Lockhart, 474 U.S. 52, 59 (1985).

When a defendant enters a plea of guilty, certain constitutional rights are waived, including the privilege against self-incrimination, the right to confront witnesses, and the right to a trial by jury. Boykin v. Alabama, 395 U.S. 238, 243 (1969). Therefore, in order to comply with constitutional requirements a guilty plea must be a "voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31 (1970). In order to ensure that a defendant understands the constitutional rights being relinquished, the trial court must advise the defendant of the consequences of a guilty plea, and determine whether the defendant understands those consequences. Boykin, 395 U.S. at 244.

In determining whether the petitioner's guilty pleas were knowing and voluntary, this court looks to the following factors:

> the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993).

On appeal, the petitioner contends that his testimony at the post-conviction hearing

shows that he did not understand his plea agreement; therefore, he should have been granted post-conviction relief. The post-conviction court found that trial counsel investigated the case and discussed the evidence with the petitioner, including the video evidence of the petitioner's participation in the drug transactions. Further, the court found that trial counsel extensively pursued plea negotiations, ultimately securing a favorable plea agreement for the petitioner. The court noted that at the guilty plea hearing, "the rate of service on the Petitioner's plea was discussed multiple times by the prosecutor, the attorney, the judge, and the Petitioner." The petitioner asked the court for clarification on the portion of the sentence he would have to serve at one hundred percent if he were convicted at trial and expressed his concern about receiving pretrial jail credits. The post-conviction court also noted that at the hearing, the petitioner stated "that he was comfortable with the deal and wanted to go through with it." The petitioner was given multiple opportunities to back out of the deal, but he said that he understood the agreement and entered the guilty pleas. The court implicitly accredited the testimony of trial counsel and found that trial counsel did not incorrectly inform the petitioner "as to any aspect of the law." See Dellinger v. State, 279 S.W.3d 282, 292 (Tenn. 2009). Therefore, the court found that counsel was not deficient in his performance and that counsel was not ineffective. Further, the court found that the petitioner knowingly and voluntarily entered his guilty pleas. The petitioner asked questions at the guilty plea hearing and, according to the post-conviction court, "demonstrated a good degree of intelligence and understanding, both during his guilty plea and at the post-conviction hearing." The evidence does not preponderate against the findings of the post-conviction court.

### III. Conclusion

Accordingly, we conclude that the post-conviction court did not err by denying post-conviction relief. Therefore, the judgment of the post-conviction court is affirmed.

_____
NORMA McGEE OGLE, JUDGE